UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION



BRETT KIMBERLIN,

    Plaintiff

v.                                                    Case No. RWT 13 CV2580

ANONYMOUS BLOGGER
KIMBERLIN UNMASKED,

    Defendant

### AMICUS MOTION OF AARON J. WALKER, ESQ. TO ALLOW DEFENDANT(S) TO FILE ANONYMOUSLY

    COMES NOW Aaron J. Walker, Esq., as an *Amicus Curiae* and hereby moves this court to allow the Defendant, the anonymous writer or writers known as Kimberlin Unmasked, to be granted leave to file anonymously before this court and states the following:

    1.    The Plaintiff has filed an abusive lawsuit against an unknown anonymous critic or critics who writes as Kimberlin Unmasked. The purpose of this suit is not to vindicate the right of copyright—because, upon information and belief, the Plaintiff does not personally own the copyright to any of the relevant material, and the each use is protected as obvious fair use. As suggested by the very name of this writer, the Defendant or Defendants are critics of the Plaintiff who uses the images in pieces

criticizing and mocking the Plaintiff which is classic fair use.[1] The purpose of this suit is merely to identify the Defendant(s)[2] and fasten unfounded liability upon him/her/them, with whom the Plaintiff has become obsessed.

2.  The Plaintiff is a person with a long criminal record. The Plaintiff is an infamous terrorist known as the Speedway Bomber. The Sixth Circuit summed up the worst of his extensive criminal history as follows:

---

[1] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S 569 (1994). It is clear that the Plaintiff knows it is fair use, because, upon information, and belief numerous other people have used similar images in a similar fashion, and yet he has filed no copyright action against them. Why? Because those critics have been identified. The writer or writers known as Kimberlin Unmasked have not, which is why the Plaintiff has selected this identity and this identity alone for an abusive copyright suit.

[2] Indeed, often identification of the Defendant is the main point of the litigation aimed at an anonymous speaker, in that plaintiffs often identify their critics and then seek no further relief from the court. Thompson, *On the Net, in the Dark*, California Law Week, Volume 1, No. 9, at 16, 18 (1999). Some lawyers admit that the mere identification of their clients' anonymous critics may be all that they desire to achieve through the lawsuit. An early advocate of using discovery procedures to identify anonymous critics has urged corporate executives to use discovery first, and to decide whether to sue for libel only after the critics have been identified and contacted privately. Fischman, *Your Corporate Reputation Online* (available at http://www.fhdlaw.com/html/corporate_reputation.htm) visited February 23, 2014; Fischman, *Protecting the Value of Your Goodwill from Online Assault*, (available at http://www.fhdlaw.com/html/bruce_article.htm) visited February 23, 2014. Lawyers who represent plaintiffs in these cases have also urged companies to bring suit, even if they do not intend to pursue the action to a conclusion, because "[t]he mere filing of the John Doe action will probably slow the postings." Eisenhofer & Liebesman, *Caught by the Net*, 10 BUSINESS LAW TODAY No. 1 (Sept.-Oct. 2000), at 40. These lawyers have similarly suggested that clients decide whether it is worth pursuing a lawsuit only after finding out who the defendant is. *Id.* Indeed, in *Swiger v. Allegheny Energy*, 2006 WL 1409622 (E.D. Pa. May 19, 2006), a company represented by the largest and most respected law firm in Philadelphia filed a Doe lawsuit, obtained the identity of an employee who criticized it online, fired the employee, and then dismissed the lawsuit without obtaining any judicial remedy other than the removal of anonymity.

2

> Kimberlin was convicted as the so-called "Speedway Bomber," who terrorized the city of Speedway, Indiana, by detonating a series of explosives in early September 1978. In the worst incident, Kimberlin placed one of his bombs in a gym bag, and left it in a parking lot outside Speedway High School. Carl Delong was leaving the high school football game with his wife when he attempted to pick up the bag and it exploded. The blast tore off his lower right leg and two fingers, and embedded bomb fragments in his wife's leg. He was hospitalized for six weeks, during which he was forced to undergo nine operations to complete the amputation of his leg, reattach two fingers, repair damage to his inner ear, and remove bomb fragments from his stomach, chest, and arm. In February 1983, he committed suicide.

*Kimberlin v. White*, 7 F.3d 527, 528-29 (6th Cir. 1993).

3.  The Defendant(s) is (are) an anonymous writer or writers who have chosen to criticize Brett Kimberlin and what is seen as his "brass knuckle reputation management," where, instead of transcending his criminal past by committing good deeds or at least leading a quiet, law-abiding life, the Plaintiff tries to silence those who criticize him by abusive lawsuits, peace orders, criminal charges, frivolous bar complaints, and other methods.

**I.
THE FIRST AMENDMENT PROTECTS THE RIGHT TO SPEAK ANONYMOUSLY ON THE INTERNET**

4.  The First Amendment protects the right to speak anonymously. *Watchtower Bible & Tract Soc'y v. Village of Stratton*, 536 U.S. 150, 166-167 (2002); *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960). These cases have celebrated the important role played by anonymous or pseudonymous writings over the course of history, from Shakespeare and Mark Twain to the authors of the Federalist Papers:

> [A]n author is generally free to decide whether or not to disclose his or her true identity. The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible. Whatever the motivation may be, . . . the interest in having

anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry. Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment...

Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.

*McIntyre*, 514 U.S. at 341-342, 356.

5. The right to speak anonymously is fully applicable online. The Supreme Court has treated the Internet as a public forum of preeminent importance because it places in the hands of any individual who wants to express his views the opportunity to reach other members of the public who are hundreds or even thousands of miles away at virtually no cost. *Reno v. ACLU*, 521 U.S. 844, 853, 870 (1997). Several courts have specifically upheld the right to communicate anonymously over the Internet. *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009); *In re Does 1-10*, 242 SW3d 805 (Tex. App. 2007); *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. 2007); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005); *Dendrite v. Doe*, 775 A.2d 756 (N.J. App. 2001).

6. Internet speakers may choose to speak anonymously for a variety of reasons. They may wish to avoid having their views stereotyped according to their racial, ethnic or class characteristics, or their gender. They may be associated with an organization but want to express an opinion of their own, without running the risk that, despite the standard disclaimer against attribution of opinions to the group, readers will assume that the group feels the same way. They may want to say or imply things about themselves that they are unwilling to disclose otherwise. And they may wish to say things that might make other people angry and stir a desire for retaliation.

7. Although the Internet allows individuals to speak anonymously, it creates an unparalleled capacity to monitor every speaker and to discover his or her identity. Because of the Internet's technology, any speaker who sends an e-mail or visits a website leaves an electronic footprint that, if saved by the recipient, starts a path that can be traced back to the original sender. *See* Lessig, *The Law of the Horse: What Cyber Law Might Teach*, 113 HARV. L. REV. 501, 504-505 (1999). Thus, anybody with enough time, resources and interest, if coupled with the machinery of the courts, can learn who is saying what to whom. Consequently, to avoid the Big Brother consequences of a rule that enables any company or political figure to identify its critics, the law provides special protections for anonymity on the Internet. *E.g.*, Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech*, 82 NOTRE DAME L. REV. 1537 (2007).

8. Following the same principle, this court should be solicitous of the Defendant's or Defendants' right to speak anonymously and adopt procedures that allow him/her/them to fight for him/her/themselves before this court as a pro se litigant without shedding his/her/their right to anonymity.

## II.
## THE FEDERAL RULES OF CIVIL PROCEDURE MAKE IT IMPOSSIBLE FOR AN ANONYMOUS PRO SE LITIGANT TO PROTECT HIM OR HERSELF FROM AN ABUSIVE SUIT AND THEREFORE THIS COURT SHOULD GRANT KIMBERLIN UNMASKED LEAVE TO FILE ANONYMOUSLY

9. As noted above, the Defendant's right to anonymous speech is a precious one, which is protected by special court processes. For instance, in *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009), the Maryland Court of Appeals set up a five point test before an anonymous writer's identity is revealed that includes "afford[ing] the anonymous posters a reasonable opportunity" to defend themselves from compelled disclosure. Id. at 457.

10. The Plaintiff is proposing to skip the part where he finds out who or whom he is actually suing, and just declare that this person, whoever he/she/they might be, has been served. The person or persons who write as Kimberlin Unmasked should be allowed to challenge that motion without giving up his/her/their right to anonymous speech.

11. Further, they have a right under 28 U.S.C. §1654 to represent themselves as follows: "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

12. Yet the Federal Rules of Civil Procedure make it impossible for Kimberlin Unmasked to exercise that right of self-representation without giving up the right of anonymity. Specifically Fed. R. Civ. P. 11(a) states that: "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number." With no attorney, Kimberlin Unmasked would have to sign the filings and, implicit in that rule, that signature must be in his/her/their real name, as well as providing a definite address, email address and phone number. Thus, a defendant like Kimberlin Unmasked, who, upon information and belief, does not have a lawyer in this case, is caught between the Scylla of leaving him/her/themselves undefended as this convicted perjurer[3] and document forger[4] has run of this court without contradiction, and the Charybdis having to give up his/her/their right to anonymous speech.

---

[3] *Kimberlin v. White*, 798 F. Supp. 472, 482(W.D. Tenn. 1992).
[4] *U.S. v. Kimberlin*, 805 F.2d 210, 228 (7th Cir. 1986).

13. Unfortunately, neither Congress nor the United States Supreme Court has given this court guidance on the subject. However, the Commonwealth of Virginia has adopted a detailed statutory provision addressing this type of situation. Va. Code. § 8.01-407.1. The Virginia code allows specifically for anonymous writers on the internet to appear in writing under their pseudonym to file documents. While that procedure applies specifically to subpoenas aimed at identification, its guidance should logically extend to an attempt to declare a person liable without even bothering to identify him/her/them as is the case in the instant motion.

14. This exact same relief was provided to Mr. Walker in the case of *Kimberlin v. Allen*, (Md. Mont. Co. Cir. Ct. 2011) case number 339254V. In that case, the Plaintiff sought to identify Mr. Walker, then an anonymous internet writer, through a subpoena. Mr. Walker wished to represent himself in seeking to have that subpoena quashed, but could not because Maryland rules required a similar signature block. In that case, Mr. Walker's request to file anonymously was granted, and this court should do the same here.

15. At the same time, while *Amicus* urges this court to grant Kimberlin Unmasked leave to file anonymously in contravention of Rule 11(a), the person or persons signing that document should not be relieved of their duties under Rule 11(b).

16. Finally, while this motion only addresses the facts of this case, seeing that this is a situation that is likely to be repeated in the future, *Amicus* recommends that it is time to adopt a standing order for this District Court on this subject similar to the proposed order submitted with this motion. No anonymous defendant or defendants should be caught in this catch-22 again.

Accordingly, *Amicus Curiae* moves that this court grant the person or persons who write as Kimberlin Unmasked leave to file anonymously in contravention of Fed. R. Civ. P. 11(a), providing only their alias and email address, without relieving such authors of their duties under Rule 11(b), and any other relief that is just and equitable.

Tuesday, February 25, 2014                    Respectfully submitted,

                                              _____
                                              Aaron J. Walker, Esq.
                                              *Amicus Curiae*
                                              Va Bar# 48882
                                              7537 Remington Road
                                              Manassas, Virginia  20109
                                              (703) 216-0455
                                              AaronJW72@gmail.com

## VERIFICATION

I, Aaron Walker, state under penalty of perjury under the laws of the United States of America, that the foregoing information is true and correct and that all exhibits are true and correct copies of the originals.

Dated: 2/25/14

_Karla Figueroa_
_Karla Figueroa_
(print name of notary public)
NOTARY PUBLIC

KARLA S FIGUEROA
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPT. 30, 2016
COMMISSION # 7226148

My commission expires on: September 30, 2016

9

## CERTIFICATE OF SERVICE

I certify that on the 25th day of February, 2014, I served copies of this document on the following parties via U. S. Mail or email as noted:

Brett Kimberlin at 8100 Beech Tree Road, Bethesda, Maryland 20817
Kimberlin Unmasked at kimberlinunmask@hush.com

_____